IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | Case No. 07 CR 750 |
| v. | ) | Judge Virginia M. Kendall |
| BENJAMIN MUOGHALU | ) | |

**MEMORANDUM OPINION AND ORDER**

On April 9, 2009, a jury convicted Defendant Benjamin Muoghalu ("Muoghalu") of conspiring to solicit and receive illegal kickbacks in violation of 18 U.S.C. § 371, soliciting and receiving illegal kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1)(B), and engaging in a mail fraud scheme to defraud and deprive Aventis Pharmaceuticals ("Aventis") of money and property and Provena St. Joseph's Medical Center ("St. Joseph's") of its right to his honest services in violation of 18 U.S.C. §§ 1341 and 1346. On December 1, 2010, the Court sentenced Muoghalu to a prison term of 22 months. Muoghalu filed a notice of appeal on December 14, 2010, and filed this Motion for Release Pending Appeal pursuant to 18 U.S.C. § 3143(b). For the following reasons, the Court denies Muoghalu's Motion.

**BACKGROUND**

In April 2003, two Aventis employees, Katy Kennedy ("Kennedy") and Frank A. Matos ("Matos") filed a *qui tam* lawsuit against Aventis. *See United States ex rel. Kennedy v. Aventis Pharmaceuticals, Inc.*, No. 03 C 2750 (N.D. Ill.). In their complaint, the two employees alleged that Aventis marketed one of its drugs, Lovenox, for off-label use, allowing physicians to submit false

reimbursement claims to Medicare in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*[1] (R. 80, Mem. Op. and Order at 2.)

The government declined to intervene on the employees' behalf, but its three-year investigation uncovered Muoghalu's criminal conspiracy. (*Id.*) Muoghalu was the pharmacy director at Saint Joseph's and was responsible for deciding which pharmaceutical products would be available in the hospital's formulary. (*Id.*) Beginning in 2001, he solicited and received $18,000 in kickbacks from Joseph Levato ("Levato"), the Aventis area business manager responsible for selling Lovenox to St. Joseph's. (*Id.* at 4.) After Aventis transferred Levato to a different sales territory in 2002, two other sales representatives, Shari Lendy ("Lendy") and Kathy Prieto ("Prieto") continued paying kickbacks to Muoghalu totaling $14,000. (*Id.* at 5.) In exchange for the $32,000 in kickbacks, Muoghalu agreed to recommend the continued purchase of Lovenox to the director of pharmacy at each of St. Joseph's branch hospitals. (*Id.* at 4.) Muoghalu never disclosed these payments to St. Joseph's, despite being required to do so. (*Id.* 5.)

After the grand jury indicted Muoghalu and Levato on November 14, 2007, the government disclosed to Muoghalu memoranda of interviews with Aventis employees, including Kennedy and Matos, among other documents. (*Id.* at 6.) These interview memoranda stated the name of the *qui tam* suit, the case number, and the factual information supporting the complaint's allegations. (*Id.*) In particular, they specifically detailed allegations of off-label Lovenox marketing and misuse of Aventis expense accounts to give physicians valuable items in exchange for prescribing Lovenox.

---

[1] The Court will summarize the facts as set forth in its August 9, 2010 opinion denying Muoghalu's motion for a new trial, or in the alternative, an evidentiary hearing. (R. 107, Mem. Op. and Order.)

2

(*Id.*)  On May 12, 2008, after Levato agreed to cooperate with the government, the government sent Muoghalu, among other documents, a memorandum summarizing Levato's proffer.  (*Id.*)

On December 11, 2008, Levato pled guilty to one count of conspiracy to pay kickbacks in violation of 18 U.S.C. § 371.  (*Id.* at 7.)  Muoghalu proceeded to trial.  Prior to trial, the Court granted the government's motion *in limine* to exclude as irrelevant any evidence or argument that Muoghalu's prosecution was motivated by its investigation into the off-label marketing of Lovenox.  (*Id.*)  Nevertheless, at trial Muoghalu's attorney mentioned the government's broader investigation into Aventis's Lovenox marketing in his opening statement and on cross-examination.  (*Id.*)

On April 9, 2009, the jury convicted Muoghalu of all three counts of the indictment.  On September 11, 2009, the government disclosed to Muoghalu's counsel for the first time investigative memoranda written by HHS Special Agent William Luczak (the "HHS Memoranda").  (*Id.* at 8.) In part, the HHS Memoranda detailed the following investigative findings: (1) several patient deaths linked to the administration of Lovenox; (2) "substantiated" kickbacks from three Aventis sales representatives to the former St. Joseph's pharmacy director; (3) the existence of an open *qui tam* investigation by HHS in Miami, Florida into alleged Medicaid fraud by Aventis; (4) Levato and Muoghalu's indictment; (5) Levato's proffer and cooperation with the government; (6) Levato's guilty plea; (7) the close of the government's investigation into the civil *qui tam* lawsuit; and (8) Muoghalu's conviction by a jury.  (*Id.* at 8–9.)

In response to the government's disclosure, Muoghalu filed a Motion for New Trial Based on Newly Discovered Evidence and for an Evidentiary Hearing on September 14, 2009, which this Court denied on August 9, 2010.  On December 1, 2010, the Court sentenced Muoghalu to a prison

3

term of 22 months. On December 14, 2010, Muoghalu filed a notice of appeal regarding his sentence, and filed this Motion for Release Pending Appeal pursuant to 18 U.S.C. § 3143(b).

In his Motion, Muoghalu argues that: (1) he does not pose a flight risk or a danger to the community; and (2) his appeal will raise a substantial question of law or fact within the meaning of 18 U.S.C. § 3143(b)(1)(B). For the reasons set forth below, the Court denies Muoghalu's Motion.

## **STANDARD OF REVIEW**

Because the statute governing release of a defendant pending appeal, 18 U.S.C. § 3143(b), directly guides the Court's analysis, the relevant portion is fully set forth below:

> [T]he judicial officer *shall* order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, *unless* the judicial officer finds–
> (A) by clear and convincing evidence that the person is likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; *and*
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in–
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, *or*
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> If the judicial officer makes such findings, such judicial officer *shall* order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

*See* 18 U.S.C. § 3143(b) (emphasis added).

Put differently, a defendant must remain incarcerated unless two criteria are met. First, that the Court determines by clear and convincing evidence that he is neither a flight risk nor danger to the community. Second, that there is a "substantial question of law or fact" that, upon appeal, is

4

likely to result in either reversal, a new trial, a sentence not requiring prison time, or a sentence of incarceration shorter than the amount of time the defendant has already served plus the amount of time the appeal is expected to take. Under this calculus, a substantial question "'is a close question' or one that very well could be decided the other way." *See, e.g.*, *United States v. Thompson*, 787 F.2d 1084, 1085 (7th Cir. 1986); *United States v. Greenberg*, 772 F.2d 340, 341 (7th Cir. 1985).

## **DISCUSSION**

Although the Court does not find that Muoghalu would pose a danger to the community or a flight risk if released due to his lack of criminal history and his pretrial compliance with bond conditions, the Court must still determine whether his appeal raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence that does not include imprisonment, or a reduced sentence less than the amount of time already serviced plus the expected time of the appeal process.

Muoghalu asserts that his conviction will be reversed due to *Brady* violations by the government. He also argues that the Court erred when it did not conduct an evidentiary hearing to determine whether a new trial was necessary on *Brady* grounds. If this Court finds that either of these arguments presents a substantial question, then it must release Muoghalu pending appeal because "the appellate court [would] more likely than not [] reverse the conviction or order a new trial on all counts for which imprisonment has been imposed" if it decided the question in his favor. *United States v. Bilanzich*, 771 F.2d 292, 298 (7th Cir. 1985).

Muoghalu first argues that he is entitled to a new trial because he had no chance to cross-examine Levato with the information contained in the HHS Memoranda. Specifically, he argues that had the government not violated its *Brady* obligations, he would have been able to use the HHS

5

Memoranda to show that Levato was being investigated by the government for other instances of kickbacks and patient deaths, which would have exposed Levato's motive to fabricate his testimony to curry favor with the government.

In *Brady*, the Supreme Court held that the "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Both impeachment and exculpatory evidence fall under this rule. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Only "favorable evidence rising to a material level of importance" is within this duty to disclose. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Thus, to establish that the alleged *Brady* violation presents a substantial question on appeal, Muoghalu must demonstrate that it is a close question whether: (1) the prosecution suppressed evidence; (2) that was favorable to him; and (3) was material to an issue at trial. *See Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001); *United States v. Walton*, 217 F.3d 443, 450 (7th Cir. 2000).

**I.     Suppression of Evidence**

Evidence is suppressed when the prosecution fails to disclose the information in time for the defendant to make use of it, and it is not otherwise available to the defendant through the exercise of reasonable diligence. *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008); *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005). When the defendant had been given the same opportunity as the government to discover the information, or otherwise knew of and had access to the material containing the information, he will be deemed to have had access to the information before trial through the exercise of reasonable

diligence. *See United States v. Senn*, 129 F.3d 886, 892–93 (7th Cir. 1997); *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996).

Here, Muoghalu had the same opportunity as the government to discover the information contained in the HHS Memoranda. First, the government turned over interview memoranda of Kennedy and Matos, all of which have the publically filed civil case name and number for the *qui tam* suit at the top. Muoghalu could have easily accessed Kennedy and Matos's civil filings setting forth all of their allegations against Aventis. The filings were public and not sealed. The filings, the interview memoranda, and Levato's proffer contained information substantiating the allegations that Aventis was engaged in off-label marketing of Lovenox resulting in patient deaths and misuse of company expense accounts. This information gave Muoghalu the allegations necessary to infer that Levato was linked to allegations of wrongdoing—which he clearly knew at the time of trial. His counsel's own statements at trial—twice mentioning the government's broader investigation of Aventis despite the government's motion *in limine*—confirm that Muoghalu had the same opportunity to access the information contained in the HHS memoranda and actually knew the information.

Muoghalu cannot rely on *United States v. Locke* to support his assertion that he exercised reasonable diligence. In *Locke*, the court held that reasonable diligence did not require a defendant to obtain a transcript of a codefendant's guilty plea hearing where his testimony exculpated the defendant because "guilty pleas are not customarily occasions in which defendants exculpate their codefendants." 1999 WL 558130 at *3 (N.D. Ill. July 27, 1999) (Williams, J.). *United States v. Payne* is similarly unavailing since the court rejected the government's argument that it had no duty to produce a publicly available exculpatory affidavit because defendant's counsel was not "aware

7

of facts that would have required him to discover the affidavit through his own diligent investigation on behalf of his client." *See, e.g.,* 63 F.3d 1200, 1209 (2d Cir. 1995). Here, unlike the defendant in *Payne*, Muoghalu was aware of facts that would have required him to discover the civil filings himself through his own diligent investigation, such as the existence of a civil *qui tam* lawsuit against Aventis, the interview memoranda, and Levato's proffer substantiating those allegations. Indeed, any requirement that he access the filings himself is more reasonable than requiring the defendant in *Locke* to obtain a costly transcript of a guilty plea that he had no reason to believe would exculpate him.[2]

Muoghalu had the essential facts and information necessary at trial to make the arguments he claims he was unable to make. Since the government did not suppress the information contained in the HHS Memoranda, the alleged *Brady* violation does not present a substantial question.

## II. Materiality

Even if the Court were to assume that the government suppressed evidence favorable to Muoghalu, the information contained in the HHS Memoranda must also be material to his case. "[F]avorable evidence is material . . . 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles*, 514 U.S. at 433 (citing *Bagley*, 473 U.S. at 682); *Carvajal*, 542 F.3d at 567. Muoghalu attempts to establish materiality by arguing that he would have used the information in the HHS Memoranda to impeach Levato on cross-examination. Yet "where impeachment evidence is merely cumulative and thereby

---

[2] Muoghalu also relies on *United States v. Burnside*, where the court held that the government suppressed evidence when it failed to disclose a memorandum that had been admitted into evidence in a closely related criminal case. *See* 824 F.Supp. 1215, 1264 (N.D. Ill. 1993). However, the court held that the defendant was not required to monitor the criminal proceeding because (1) the government had obtained a highly restrictive protective order inhibiting communications between defense counsels in those cases, and (2) the memorandum was not even available as part of the public record. *Id.* at 1262. These factors are not present here.

8

has no reasonable probability of affecting the result of trial, it does not violate the *Brady* requirement." *United States v. Dweck*, 913 F.2d 365, 371 (7th Cir. 1990).

Here, Levato was already thoroughly impeached at trial without the information contained in the HHS Memoranda. Muoghalu's counsel's effective and comprehensive cross-examination of Levato revealed to the jury that Levato had been indicted and had pled guilty to paying Muoghalu kickbacks. (Tr. at 434.) The jury understood that Levato agreed to testify in this case in return for a lighter sentence and that the government had dismissed other criminal counts against him. (*Id*.) Levato's bias, motivation to testify, and involvement in criminal activity were thoroughly explored.

Although "new impeachment evidence could be material" when "the government's case rests 'entirely on the uncorroborated testimony of a single witness,'" *United States v. Salem*, 578 F.3d 682, 688 (7th Cir. 2009) (citing *United States v. Taglia*, 922 F.2d 413, 415 (7th Cir. 1991)), that is not the case here. In *Salem*, the court held that the government violated *Brady* when it failed to disclose that its "star" witness, Carlos Lopez, had been involved in a murder for which he had never been charged. *Id.* at 683. Aside from Lopez, "[n]o other witness provided a complete narrative, start to finish, of the events that led to [the defendant's] charges." *Id.* at 688. Here, other witnesses corroborated Levato's testimony and filled in further details of the scheme.

Nor is this case like *United States v. Sanchez*, No. 07 CR 149, 2009 WL 5166230 (N.D. Ill. Dec. 22, 2009) (Gettleman, J.). In *Sanchez*, the court held that the government violated *Brady* when it failed to disclose that a witness's criminal background before trial. *Sanchez*, 2009 WL 5166230, at *9. It did so because his uncorroborated testimony established that the defendant received personal gain in the form of cash—a key legal element of the government's theory that the defendant defrauded the City of Chicago of his honest services. *Id.* at *7.

9

In contrast, the government did not need Levato's testimony to prove that Muoghalu accepted kickbacks worth $32,000 from Aventis in exchange for agreeing to keep Lovenox on St. Joseph's formulary. Levato testified that he only paid Muoghalu the first $18,000 because he was soon transferred to a different sales territory. Prieto and Lendy corroborated that account, and also added that they paid Muoghalu the other $14,000. They testified that they delivered $14,000 in checks to Muoghalu, and that their superiors told them to enter false speaking events for Muoghalu in Aventis's computer system. Finally, the government introduced documents that supported Levato, Prieto, and Lendy's testimony, including conflict of interest forms completed by Muoghalu in which he failed to disclose that he had received money from Aventis. Thus, while Levato may have been the only witness who testified that the kickbacks were Muoghalu's idea, his testimony was sufficiently corroborated by other witnesses and documents at trial. Unlike the *Salem* case which needed an evidentiary hearing due to the "sparse" record regarding whether Lopez's cooperation spared him a possible sentence of death, 578 F.3d at 689-90, here Levato was thoroughly impeached regarding his motivation for testifying. The HHS Memoranda did not give Muoghalu any new information warranting such a hearing. As such, there is no reasonable probability that the result of the proceeding would have been different had the HHS Memoranda been disclosed before trial. Therefore, Muoghalu has failed to present a substantial question whether the information contained in the HHS Memoranda was material to Muoghalu's case.

## **CONCLUSION**

For the reasons stated, the Court denies Muoghalu's Motion for Release Pending Appeal.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: **May 5, 2011**